**Murray A. WINSLOW, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation Administration, Respondents.**

No. 88–7169.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1989.

Decided Sept. 14, 1989.

---

Safety Board (NTSB or Board) subjecting him to a 90–day suspension of his Airline Transport Pilot (ATP) Certificate. The NTSB reversed a decision by Administrative Law Judge (ALJ) Davis reducing Winslow's suspension to 30 days from the 90–day suspension originally imposed by the Administrator of the Federal Aviation Administration (FAA). Winslow challenges only the sanction imposed by the NTSB. He does not appeal the NTSB's determination that he violated federal aviation regulations, nor does he challenge the factual or credibility determinations made by the ALJ. We have jurisdiction over Winslow's Petition for Review pursuant to 49 App.U.S.C.App. §§ 1486(a) (1982) and we affirm.

## BACKGROUND

Winslow has been a pilot for 45 years. On June 21, 1984, he flew a Cessna 441 along the California coast, operating under Visual Flight Rules (VFR). According to eyewitnesses from a nearby aircraft, on that date Winslow was flying at an altitude of less than 500 feet below the base of the clouds. Winslow was therefore charged with violations of Federal Aviation Regulation (FAR) 91.105(a), 14 C.F.R. § 91.105(a) (1988) and FAR 91.9, 14 C.F.R. § 91.9 (1988).[1]

The Administrator of the FAA found that Winslow had violated FARs 91.105(a) and 91.9 and suspended Winslow's ATP Certificate for 90 days. Winslow appealed the suspension. After a hearing, ALJ Davis affirmed the violations because there was sufficient evidence in the record to support a finding that Winslow's plane flew less than 500 feet below the base of the clouds while operating under VFR. However, ALJ Davis reduced the length of the suspension to 30 days, stating that: "a 30–day suspension would be in accord with [NTSB] precedent and more appropriate in

Scott D. Raphael, Newport Beach, Cal., for petitioner.

Karen R. Bury, Federal Aviation Admin., Washington, D.C., for respondents.

Before CANBY, WIGGINS and O'SCANNLAIN, Circuit Judges.

CANBY, Circuit Judge:

Murray Winslow petitions for review of an order of the National Transportation

---

1. FAR 91.105(a) prohibits, with certain exceptions not relevant here, operation of "an aircraft under VFR when the flight visibility is less, or at a distance from clouds that is less, than that prescribed for the corresponding altitude," as set forth in a table in the regulations. 14 C.F.R. § 91.105(a) (1988). FAR 91.9 provides that "[n]o person may operate an aircraft in a care- less or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.9 (1988).

Throughout this opinion, we use "FAR" to refer to regulations appearing at title 14 of the 1988 edition of the Code of Federal Regulations unless otherwise indicated.

light of the fact that lateral separation was never less than one mile and that [Winslow] is totally dependent upon his certificate for his livelihood."

Both sides appealed the ALJ's decision to the full Board, which concluded that the evidence was sufficient to support a finding of a violation. However, the NTSB also found that the reasons given by the ALJ for reducing Winslow's sanction were unconvincing, noting "the overriding factor is the fact that ... it is essential to provide IFR [Instrument Flight Rule] pilots with that 500 foot margin of safety below clouds in order to ensure that there will be no conflict with other traffic." Therefore, the Board reinstated the 90–day suspension over the dissent of Board Member Nall. Citing several factually similar cases in support of the proposition that a less severe sanction accorded with NTSB precedent, Board Member Nall voted to affirm the ALJ's finding that it was appropriate to reduce the sanction to a 30–day suspension.

Winslow next filed a petition for reconsideration and modification of the sanction to the full NTSB. Denying Winslow's petition, the Board stated that there was no prior case precisely on point and "[c]onsequently, the available case law that construes FAR Section 91.105 provides guidance but no binding precedent." The Board also noted that "[a] higher sanction may be sought in a particular case because of diverse safety and enforcement concerns." Therefore, the NTSB held that the sanction imposed on Winslow should be affirmed because it served "the interests of collision avoidance, a subject of growing concern, and it will serve to forcefully remind both respondent and other pilots similarly situated that collision avoidance in visual flight conditions can best be accomplished by strictly adhering to regulations so that visibility is not obstructed by proximity to clouds." Board Member Nall did not concur.

Winslow received a stay of the sanction pending this appeal. Winslow contends that the NTSB acted arbitrarily and capriciously in reinstating the 90–day suspension of his ATP Certificate. He asks this court to set aside the 90–day suspension and to reimpose a reduced 30–day suspension.

## DISCUSSION

Judicial review of an NTSB order is conducted in accordance with Chapter 7 of the Administrative Procedure Act. 49 App. U.S.C.App. § 1903(d) (1982). Thus, NTSB decisions, including decisions regarding sanctions, will be upheld *unless* they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). *See Kolek v. Engen,* 869 F.2d 1281, 1285 (9th Cir.1989); *Essery v. Department of Transportation,* 857 F.2d 1286, 1288 (9th Cir. 1988). "The arbitrary and capricious standard requires a 'wide deference' be given to an agency's choice of sanction." *Go Leasing, Inc. v. NTSB,* 800 F.2d 1514, 1518 (9th Cir.1986) (quoting *Holmes v. Helms,* 705 F.2d 343, 347 (9th Cir.1983) (per curiam)). *See also Cobb v. NTSB,* 572 F.2d 202, 204 (9th Cir.1977) (per curiam) (NTSB has "broad discretion in determining the punishment for violation of [FAA] regulations").[2]

It is undisputed that the FAA "operates under a specific policy mandating uniformity of sanctions." *Essery,* 857 F.2d at 1291. *See* Department of Transportation, FAA Order No. 2150, ¶ 203c.3 ("Each region must make every effort to achieve uniformity of enforcement action. *Similar violations under similar circumstances should result in the same type of enforcement action and sanction*") (quoted in *Essery,* 857 F.2d at 1291). In *Essery v. Department of Transportation,* we recently reversed the NTSB's reinstatement of a license revocation on the ground that the NTSB, like the FAA, is not entitled totally to disregard the uniform sanction policy. *Essery,* 857 F.2d at 1293 (citing

---

**2.** Winslow has stressed that a 90–day suspension, unlike a 30–day suspension, will result in the permanent termination of his employment, and that, because of his age, he is unlikely to be hired by another company. Under the deferential standard of review we must employ, our independent consideration of these personal factors is obviously constrained.

*Airport Parking Management v. NLRB*, 720 F.2d 610, 615 (9th Cir.1983)). The FAA had revoked Essery's commercial pilot certificate for violations of FARs 91.79 (operating aircraft at an altitude of less than 1,000 feet above the highest obstacle in a congested area) and 91.9. ALJ Davis affirmed the findings of violations, but modified the FAA's sanction, ordering a 120–day suspension rather than a revocation. The NTSB reversed the ALJ on the sanction issue and reinstated revocation. Essery petitioned this court for review of the NTSB's decision. *Id.* at 1288.

We affirmed the findings that Essery violated FARs 91.79 and 91.9. *Id.* at 1293. However, after noting that it was unquestioned "that revocation is a much more severe sanction than has been imposed in the past for similar violations," *id.* at 1291, we reversed the revocation order and reinstated the ALJ's 120–day suspension. Specifically, we found that "[g]iven the NTSB's policy [of uniformity of sanctions], and the facts involved [here], revocation is too harsh a sanction." *Id.* at 1293. In addition, we stated that the NTSB had "given no satisfactory reason why Essery's conduct 'warrants a greater or lesser penalty than has generally been imposed on others in the past for like violations,'" *id.* (quoting *Administrator v. Richards*, 3 NTSB 3044, 3045 (1980) (NTSB Order No. EA–1516)), to justify a departure from NTSB precedent.

■ At first glance, *Essery* might appear to require reversal of the order in this case due to the NTSB's failure to give "satisfactory reason[s]" for reversing the reduction in sanction recommended by the ALJ. *Essery*, however, is distinguishable.

Although the sequence of events is similar, Winslow's 90–day suspension, unlike the revocation in *Essery*, does not represent a sufficient deviation from NTSB precedent to require the Board to state reasons for its decision or otherwise to justify our interference with the Board's decision. Sanctions for violations of FAR 91.105(a) and similar regulations pertaining to flights by pilots under VFR into instrument or special clearance conditions have historically fallen within the 30– to 90–, and even 120–day, suspension range. *See, e.g., Administrator v. Cuington*, 3 NTSB 3587, 3588 (1981) (NTSB Order No. EA–1610) (NTSB upheld 30–day sanction, reduced from 60–day suspension of airman certificate by ALJ, for violation of FARs 91.105(a) and 61.2(e)(1);[3] *Administrator v. Wilson*, 2 NTSB 1077, 1079 (1974) (NTSB Roder No. EA–620) (NTSB upheld 90–day suspension, reduced by ALJ from 180 days, for VFR flight into clouds in violation of FARs 61.2(f)(3), 91.-105(a) and 91.9); *Administrator v. Grey*, 2 NTSB 692, 694 (1974) (NTSB Order No. EA–545) (NTSB reduces suspension from 180 to 120 days for VFR flight through clouds in violation of FARs 91.105(a) and 91.9).

Therefore, although a 90–day suspension is at the high end of the sanction scale for similar violations, it is not entirely unsupported by precedent. The NTSB's decision was not arbitrary and capricious or an abuse of its broad discretion. *See Kolek v. Engen*, 869 F.2d 1281, 1285 (9th Cir.1989) (characterizes *Essery* as involving a situation where the sanction "grossly exceeded the sanctions imposed in other proceedings for violations of the particular FARs at issue").[4] Because we hold that Winslow's

---

**3.** Violations of FAR 61.3(e)(1) are relevant to consideration of an FAR 91.105(a) violation: "[i]nasmuch as section 91.105(a) contains the basic VFR weather minimums, a violation of its terms is likewise a violation of section 61.3(e)(1) with respect to a pilot [flying under VFR without an instrument rating]." *Administrator v. Schorr*, 3 NTSB 2193, 2195 (1979) (NTSB Order No. EA–1356) (NTSB affirmed a 35–day suspension, reduced by the ALJ from a 60–day suspension, for violation of 91.105(a), 91.9, 91.87(b) (failure to communicate with control tower) and 61.3(e)(1)). Winslow was not, however, charged with a violation of FAR 61.3(e).

**4.** Winslow's contention that the NTSB should be judicially estopped from asserting that his sanction was warranted by precedent is meritless. The NTSB has never asserted that the 90–day sanction was *not* warranted by precedent. Rather, the Board has argued only that the FAA's interest in safety and collision avoidance permits imposition of a 90–day penalty, regardless of whether or not the suspension comports with precedent. This is not the kind of case which calls for judicial estoppel.

suspension is in line with prior sanctions imposed or affirmed by the NTSB, we need not address whether the Board's articulation of diverse safety and enforcement concerns was or would be sufficient to satisfy *Essery's* requirement that "satisfactory reasons" be given for departure from Board precedent regarding sanctions.[5]

Apart from relying on *Essery*, Winslow contends that the ALJ's reduction of suspension to 30 days should be upheld because the ALJ's reliance on factually similar precedent satisfies the requirement of "clear and compelling reasons" for reducing a sanction. *Administrator v. Muzquiz*, 2 NTSB 1474 (1975) (NTSB Order No. EA–711); *see Administrator v. Shelton*, 3 NTSB 2173 (1979) (NTSB Order No. EA–1352). But an ALJ's reliance on similar precedent does not automatically protect an ALJ's reduction from reversal by the Board. The Board has explained that:

> The deference ... accorded the Administrator, in recognition of his responsibilities respecting air safety, should be observed, under the [Muzquiz] standard, unless clear and compelling reasons, cognizable within the Board's review authority, justify a different sanction. One such reason may be presented where the Administrator's sanction cannot be reconciled with sanctions imposed in past cases involving the same or similar violations. This is so because our review function includes the obligation to insure that like offenses receive like sanctions. *However, since violations of the same*

*regulation in different cases may be predicated on widely dissimilar factual circumstances, and may raise entirely diverse safety and enforcement concerns, the fact that different sanctions have been ordered by the Administrator in separate cases for the same regulatory violation does not, standing alone, necessarily present an issue of disparate treatment which could be deemed a compelling reason for modifying the sanction he has sought in the later case.* Such an issue would ordinarily arise only where the material facts of each case were so similar that no persuasive distinguishing feature could be identified.

*Administrator v. Pearson*, 3 NTSB 3837, 3838 (1981) (NTSB Order No. EA–1662) (emphasis added).[6]

Therefore, applying this language of *Pearson*, we conclude that the NTSB did not err in overturning the ALJ's reduction of sanction. The NTSB simply and permissibly held that the ALJ's Davis' reliance on unspecified "precedent" to support a reduction in sanction is not a sufficient "clear and compelling reason" to justify departure from the sanction chosen by the Administrator.[7]

The Petition for Review is DENIED.

---

5. Winslow points out that the disparity between the FAA's choice of sanction and the ALJ's reduced sanction is proportionally equal in this case and in *Essery*. In other words, 30 days is one-third of the 90–day suspension and 120 days is effectively one-third of a revocation because a pilot can reapply for his or her ATP Certificate one year after revocation. *See* 14 C.F.R. § 61.13(g)(1) (1988). Because the disparity is proportionally similar in the two cases, reasons Winslow, the need to articulate substantial reasons for reversing the ALJ's reduction is necessary. We reject this argument. A significant departure *from precedent* triggers the *Essery* rule, *not* the degree of disparity between the original and the reduced sanction.

6. Winslow misses the mark when he suggests that *Essery* has disapproved *Pearson sub silentio*. *Pearson* actually reaffirms the rule regarding uniformity of sanctions, but holds that factually similar precedent is not the *only* factor which may be taken into account. 3 NTSB at 3838. This is not inconsistent with the holding in *Essery*.

7. The Board recently noted that "[t]he obligation of a law judge, under *Muzquiz*, to provide 'clear and compelling reasons' for reducing a sanction, in a case in which all alleged violations have been established, in no way abridges the Board's authority to review the appropriateness of the law judge-reduced sanction." *Administrator v. Fallon*, NTSB Order No. EA–2728 (1988) (order denying reconsideration).