NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0003n.06

Case No. 20-3402

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PAUL S. FULLERTON,

    Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION,

    Respondent.

)
)
)
)
)
)
)
)
)

**FILED**
Jan 04, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE NATIONAL
TRANSPORTATION SAFETY
BOARD

Before: GUY, LARSEN, and MURPHY, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Paul Fullerton petitions for review of the final order suspending his Commercial Pilot Certificate for having violated several Federal Aviation Administration regulations while flying two passengers to Mackinac Island on the morning of October 24, 2014. Finding that the agency's decision was supported by substantial evidence, we deny the petition for review and affirm the 90-day suspension of Fullerton's Commercial Pilot Certificate.

I.

Fullerton was found to have violated several FAA regulations "by operating a passenger-carrying flight under [visual flight rules] in Class E airspace between Traverse City, Michigan, and Mackinac Island, Michigan, [1] at a distance of less than 300 feet below the overcast cloud ceiling around Mackinac Island and [2] at an altitude over the Straits of Mackinac . . . that would

not have allowed the aircraft to reach land in the event of engine failure." (NTSB Order p. 2.)

Fullerton does not deny that doing so would be a violation of several FAA regulations—namely,

14 C.F.R. § 91.155(a) (distance below cloud cover), § 135.183(a) (elevation over water), and §

91.13(a) (operating in a reckless manner). Nor is there any dispute that an FAA inspector observed

a small unidentified aircraft making an approach to Mackinac Island from the south under those

conditions. Fullerton insisted, however, that the aircraft that was observed doing so could not have

been his because he made his approach to Mackinac Island from the east (not the south) precisely

in order to avoid the low cloud cover in question.

The ALJ did not believe Fullerton's account and found "strong circumstantial evidence

that the aircraft he observed on October 24 was [Fullerton]'s." The National Transportation Safety

Board's review is plenary, except that it defers to an ALJ's credibility determination unless it was

made in an arbitrary or capricious manner. *See Porco v. Huerta*, 472 F. App'x 2, 3 (D.C. Cir.

2012) (per curiam). Here, deferring to the ALJ's credibility assessment, the NTSB evaluated the

evidence and concluded that the alleged violations had been established "by a preponderance of

reliable, probative, and credible evidence." Fullerton appealed.

II.

"This court may set aside [the NTSB's] action only if it finds it to be arbitrary, capricious,

an abuse of discretion, or, where there has been a hearing, [it] is unsupported by substantial

evidence." *Singer v. Garvey*, 208 F.3d 555, 558 (6th Cir. 2000); *see also McCarthney v. Busey*,

954 F.2d 1147, 1153 (6th Cir. 1992). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Singer*, 208 F.3d at 558.

On the morning of October 24, 2014, FAA Inspector Thomas Kozura decided to observe

operations of Fullerton's company because of the overcast weather conditions in the area. At about

8:30 a.m., Kozura drove to the Mackinaw County Airport in St. Ignace, Michigan, where he found an open and empty hanger for Fullerton's Piper PA 32-260 (N7122J). At 8:40 a.m., after moving to a better vantage point, Kozura could see a small aircraft at a distance of about five miles flying "too close to the cloud ceiling to be in compliance with" FAA regulations.

Kozura first spotted that aircraft to the south at a location "near the end of the Mackinac Bridge at Mackinaw City." Using binoculars, Kozura saw the aircraft fly from the south "toward Mackinac Island, directly across the Straits," watched it "begin a normal descent and approach Mackinac Island for a downwind landing," and followed its path "until it disappeared behind the trees at Mackinac Island." Viewing the aircraft from a distance no closer than three or four miles, Kozura could say only that the aircraft appeared to be "a single engine, low wing aircraft with fixed landing gear and a long nose." Those characteristics were generally consistent with a number of aircraft, including a Piper PA 32-260.

Fullerton admitted that he piloted his PA 32-260 (N7122J) on a flight that carried two passengers from Traverse City and landed at the Mackinac Island Airport at 9:00 a.m. on the day in question. Although no one actually saw him land, Kozura called the Mackinac Island Airport after losing sight of the aircraft he was watching to find out who had just landed. Kozura spoke with Mr. Bradley, the assistant airport manager at the time, who said Fullerton had just off-loaded passengers and was taking off again.

Bradley testified that he had known Fullerton professionally for twenty years. On the morning in question, Bradley "heard an aircraft land and approach the terminal" and looked out to see Fullerton and the N7122J on the ramp and two people in the lobby. Bradley testified that he did not remember hearing or seeing any other aircraft around that time and explained that marginal weather conditions would drastically reduce the number of aircraft flying to Mackinac Island.

Both Kozura and Fullerton also testified that they did not observe or hear any other aircraft during the relevant time period.

After talking with Bradley, Kozura saw an aircraft take off from Mackinac Island and was waiting when it landed at the Mackinac County Airport in St. Ignace. Fullerton parked that aircraft fifteen feet away from Kozura's vehicle. Fullerton and Kozura were well acquainted. According to Kozura, Fullerton made eye contact and "began to briskly walk away rather than say hello and make small talk as was [his] normal custom." Kozura followed him to ask about the flight and testified that Fullerton was unusually agitated, denied flying across the Straits, and refused to sign a Pilot's Bill of Rights document. Kozura believed Fullerton was angry because he had gotten caught violating FAA regulations.

By Fullerton's account, however, Kozura was the one who was upset during their discussion about the flight Kozura observed. Fullerton says he told Kozura that it wasn't him because he "had flown east of Pellston to Mackinac Island," but Kozura was not listening. During the evidentiary hearing, Fullerton described his flight path more specifically—testifying that he flew past Pellston, Mackinaw City, and near Cheboygan before turning back to approach Mackinac Island from an easterly direction over Bois Blanc Island. Fullerton acknowledged that this route was not specifically identified in response to the FAA's letter of investigation or in discovery, explaining that no one but his attorney had asked him. The ALJ found it was unlikely that Fullerton would have withheld "such critical details simply because he was not asked the specific question directly."

It is true that Fullerton's 2017 Answer filed in the proceedings before the ALJ described a flight path "along the south shore of the Mackinac Island area and continu[ing] eastbound past Mackinac Island, where the weather was rapidly clearing." But that description did not identify

the specific route, as it stated only that once Fullerton was "southeast of Mackinac Island, still over land," he was "able to reverse course back to the west and approach Mackinac Island from the east." This statement is consistent with the ALJ's finding and does not show the ALJ's credibility determination was arbitrary or capricious.

On the eve of the hearing, Fullerton's counsel proffered the expert opinion of a forensic meteorologist concerning the cloud ceilings and surface visibility at the Cheboygan airport between 8:30 and 9:00 a.m. on October 24, 2014. But the expert's report was disclosed late—one day before the hearing in June 2017—so the ALJ excluded it. Fullerton sought to excuse the lateness on the grounds that the FAA's initial disclosures of weather data did not include reports of the conditions at the Cheboygan airport. The ALJ was not persuaded, and Fullerton now argues that this was reversible error. But because Fullerton failed to challenge the exclusion of this evidence before the NTSB, he is precluded from raising it here. *See Gabbard v. FAA*, 532 F.3d 563, 566 (6th Cir. 2008).[1]

Relatedly, Fullerton seems to argue that the ALJ's decision was not supported by substantial evidence because, although the ALJ was aware of the expert's report concerning the weather conditions at the Cheboygan airport, he found there was no "dispute about the weather conditions in the vicinity of Mackinaw City, Mackinac Island, or the Straits of Mackinac that morning." But one had nothing to do with the other. There was, indeed, no dispute regarding the cloud conditions observed by Kozura over the Straits between Mackinaw City and Mackinac Island. As the ALJ went on to explain, "[Fullerton] concedes there were low ceilings in that

---

[1] The FAA also argues, in the alternative, that Fullerton has not demonstrated that the ALJ abused its discretion by excluding the evidence. *See Adm'r v. Angstadt*, NTSB Order No. EA-5421, 2008 WL 5373647, at *4 (Dec. 17, 2008) (an ALJ has "significant discretion in overseeing administrative hearings and admitting evidence into the record").

vicinity" and "Inspector Kozura testified to his observations of the overcast conditions, and the certified weather data at Exhibit A-9 confirms overcast ceilings at 900 to 1,000 AGL."

Finally, Fullerton argues that there was no affirmative evidence proving that the aircraft Kozura observed was Fullerton's PA-32-260 (N7122J). Rejecting this argument, the NTSB explained that circumstantial evidence may be sufficient to carry the burden of proving "key issues of aircraft and pilot identity" by a preponderance of the evidence. (NTSB Order, p. 14 (quoting *Adm'r v. Owens*, 4 NTSB 907, 908 (May 17, 1983), *aff'd*, 734 F.2d 399, 401 (8th Cir. 1984)). Here, the NTSB properly recognized that its decision rested on which account was to be believed— Fullerton's insistence that he took a different route—or Kozura's conclusion that the aircraft he observed could not have been anyone else's.

The NTSB deferred to the ALJ's credibility determination, finding there was an adequate rationale for it and that the evidence of record supported it. After reviewing the evidence, the NTSB concluded as follows:

> [W]e agree with the [ALJ] that while "it might be possible that another aircraft with a similar profile was being operated in the vicinity of the Mackinac Island Airport at the exact time respondent was approaching and landing at the airport from a different direction," such a possibility was "unlikely." We further agree that it is "even more implausible that there were two very similar aircraft operating at or near the same airport at the same time, and neither Mr. Bradley, Inspector Kozura, nor respondent observed or heard that aircraft," particularly given Mr. Bradley's testimony about the "drastically limited number of aircraft operating at Mackinac Island Airport on such marginal weather days." The [ALJ] did not err by relying on the circumstantial evidence presented in this case, and we find that the Administrator has established by a preponderance of reliable, probative, and credible evidence that respondent violated [FAA regulations] as alleged in the complaint.

The NTSB's factual findings are not to be disturbed if they are supported by substantial evidence. *McCarthney*, 954 F.2d at 1153; 49 U.S.C. § 1153(b)(3). And its conclusions may be supported by substantial evidence "even though a plausible alternative interpretation of the evidence would

support a contrary view." *McCarthney*, 954 F.2d at 1153 (citation omitted). Fullerton has not

demonstrated that the NTSB's decision affirming the ALJ's order was arbitrary, capricious, or not

supported by substantial evidence.

\* \* \*

The petition for review is DENIED and the FAA's final order is AFFIRMED.