Terry L. **BLACKMAN**, Petitioner,

v.

James B. **BUSEY**, Administrator, Federal Aviation Administration, Respondent.

No. 90–3894.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1991.

Decided July 10, 1991.

**660**

John Scott Hoff, Tamara L. Warn (argued), Lapin, Hoff, Slaw & Laffey, Chicago, Ill., for petitioner.

J.E. Murdock, III, Vivian B. Wiesner, Kathleen Ann Yodice (argued), Federal Aviation Admin., Office of General Counsel, Washington, D.C., Michael F. McKinley, Office for Federal Aviation Admin., Great Lakes Region, Des Plaines, Ill., for respondent.

Before KEITH and MILBURN, Circuit Judges, and HILLMAN, Senior District Judge[*].

HILLMAN, Senior District Judge.

Petitioner Terry Blackman petitions this court to review an order of the National Transportation Safety Board ("NTSB") revoking his pilot's certificate. The Administrator of the Federal Aviation Administration ("Administrator") ordered an emergency revocation of petitioner's air transport pilot's certificate due to petitioner's alleged violations of certain federal aviation regulations. An administrative law judge conducted a hearing and affirmed the Administrator's revocation order. Petitioner then appealed to the NTSB, which also affirmed the Administrator's order, and petitioner now seeks review of the NTSB's order in this court. For the reasons set forth below, we affirm.

I.

On February 9, 1990, petitioner Blackman was the pilot in command of a Cessna aircraft owned by Crain Communications, Inc. On a flight from Toledo, Ohio, to Detroit City Airport, Detroit, Michigan, while flying under visual flight rules, petitioner Blackman flew the aircraft into the terminal control area and the airport traffic area controlled by the Detroit Metropolitan Airport without first having obtained permission to do so, a violation of the Federal Aviation Regulations, particularly 14 C.F.R. § 91.90(a)(1).

The FAA's evidence also showed that petitioner Blackman's aircraft entered the controlled areas while traveling at 290 knots, a speed in excess of the limits provided for by the applicable regulations, 14 C.F.R. §§ 91.70(a) and 91.70(b)(2). The petitioner testified that his speed was never above 250 knots indicated air speed and explained that he failed to obtain authorization to enter the controlled areas because his radio was momentarily inoperable.

Several witnesses, whose duties were to monitor and control air traffic around Detroit Metropolitan Airport, testified from their personal observations that Blackman's aircraft came within two or three miles of the airport, a location well within the controlled zone, before it turned sharply and its transponder went off. In particular, there was testimony by a quality assurance specialist to the effect that he prepared a computer track of the flight path of Blackman's aircraft and that this national track analysis program ("NTAP") showed that the aircraft was traveling at 290 knots while in the controlled zones, and that it came into potential conflict with two departing aircraft.

Petitioner Blackman admitted seeing the two departing aircraft, but he claimed he was a safe distance from them as they

---

[*] Honorable Douglas W. Hillman, Senior United States District Judge for the Western District of Michigan, sitting by designation.

were well above his altitude. He explained further that he turned his transponder off in order to recycle it preparatory to resetting it to a "squawk" of 7600, a special identifier that would have alerted controllers to the fact that he was experiencing a communications problem aboard the aircraft. Mysteriously, his radios began to function again, and, without contacting the controllers at Detroit Metropolitan Airport to explain what had occurred, petitioner Blackman simply flew off to his destination with his transponder still turned off. These activities were responsible for his being charged with violations of 14 C.F.R. § 91.87(b), which prohibits a person from operating an aircraft without maintaining radio contact with an airport's control tower, and 14 C.F.R. § 91.9, which prohibits the operation of an aircraft in a reckless manner that endangers the life or property of others.

The administrative law judge sustained all of these charges and found the Administrator's emergency revocation to be appropriate. On August 13, 1990, the NTSB affirmed the decision of the administrative law judge, and this timely petition followed.

The issues in this case are (1) whether the factual findings by the NTSB are supported by substantial evidence, (2) whether revocation of petitioner Blackman's certificate was an abuse of discretion, (3) whether the Administrator's use of his emergency authority was an abuse of his discretion, and (4) whether the emergency revocation in this case denied petitioner Blackman any of his rights protected by the due process clause of the Fifth Amendment.

## II.

### A.

Judicial review of orders of the NTSB is provided for by 49 U.S.C.App. § 1903(d), which specifies that the review shall be in accordance with the provisions of the Administrative Procedure Act, particularly 5 U.S.C. § 706. Insofar as relevant to this case, that section provides that this court may set aside agency action if it finds it to be arbitrary, capricious, an abuse of discretion, or, where there has been a hearing, the agency action is unsupported by substantial evidence. "The findings of facts by the Board or Administrator, if supported by substantial evidence, shall be conclusive." 49 U.S.C.App. § 1486(e). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Board of Governors v. First Lincolnwood Corp.,* 439 U.S. 234, 253, 99 S.Ct. 505, 515, 58 L.Ed.2d 484 (1978); *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Hatfield v. Secretary of HHS,* 743 F.2d 1150, 1158 (6th Cir.1984).

## III.

### A.

Petitioner Blackman first argues that the findings of the agency are unsupported by substantial evidence. There is little merit in this argument because there is in the record the testimony of five air control professionals to establish the speed and altitude of the petitioner's aircraft as well as its incursion into the protected zones without authorization. Controller Leggett testified that petitioner's aircraft entered the airport traffic area without authority and came to within three miles of the airport before turning off. Controller May observed the aircraft visually and on his radar screen and testified that the aircraft came to within two miles of the airport at an altitude of 2000 feet. Controller Bracken tracked the aircraft on her computer and noted its ground speed to be 290 knots, while controller Pavley testified that the aircraft came within three miles of the airport and that it entered both of the protected zones. Controller Rich, who prepared the NTAP regarding this incident, testified that the petitioner's aircraft violated both of the protected areas while traveling at 290 knots and that its course placed it in a potential head-on conflict with two flights outbound from the airport. Finally, controller Pavley testified that, when the aircraft turned to make its abrupt departure from the controlled zones, its transponder went off completely, thus depriv-

ing the controllers of information concerning the aircraft's altitude and identification.

At his hearing the petitioner did not seriously dispute the fact of his unauthorized incursion. He did try to show that his indicated air speed was less than that claimed by the FAA's witnesses by demonstrating that he may have had a tail wind and that his indicated air speed, therefore, may actually have been below the speed limits despite his ground speed. He explained that he was unable to contact the airport because of intermittent radio problems and testified that he turned his transponder off with the idea that he would reset it to "squawk" a 7600 code denoting a communications emergency. He later thought the better of this and did not reset or return the transponder to operation.

It seems from proof that the FAA's evidence is such that a reasonable mind might accept it as adequate to support the agency's conclusions in this case. It does not matter that other reasonable conclusions are theoretically possible. *Chritton v. Nat'l Transp. Safety Bd.*, 888 F.2d 854, 856 (D.C.Cir.1989). As for matters of conflicting testimony and judgments respecting credibility, it is the NTSB which serves as the ultimate factfinder and the determiner of credibility. *Chirino v. Nat'l Transp. Safety Bd.*, 849 F.2d 1525, 1532 (D.C.Cir.1988). The findings of the NTSB are supported by substantial evidence and are therefore conclusive.

## B.

■ The Administrator has the discretion to revoke a pilot's certificate.

[I]f he determines that safety in air commerce or air transportation and the public interest requires, ... [he] may issue an order ... suspending, or revoking, in whole or in part, any type certificate....

49 U.S.C.App. § 1429(a). The petitioner does not challenge the Administrator's authority in this connection, but he does argue that the revocation of his license is an excessive sanction when compared to the more common sanction for violating controlled air spaces, a suspension of the pilot's certificate, usually for 30 or 60 days.

The administrative law judge, and the NTSB on appeal, concluded that the sanction imposed in this case was appropriate because this infraction bore "scant resemblance to the more typical unauthorized TCA [terminal control area] incursion, which frequently involves little more than a low-time pilot nicking a TCA in territory with which he is unfamiliar." NTSB Opinion and Order, J.A. p. 8. The NTSB found that several aggravating factors distinguished this case from the ordinary incursion, the first of which was that the petitioner's airman certificate had been suspended for 45 days for a traffic control area violation in 1986. The instant violation was, therefore, the petitioner's second.

More important was the conduct of petitioner Blackman in turning off his transponder once he realized that he was in the process of committing his second traffic control area violation. Blackman testified that he turned his transponder to its standby position, thereby stopping its transmissions in order to change its setting to the communications emergency code of 7600. He did not explain, however, why he never turned the transponder back on. The NTSB, rejecting his incredible explanation, found instead that this was an effort by a repeat offender to evade detection and that, as such, it belied on his part a "willingness to compromise air safety when he believe[d] doing so might advance his personal interests." NTSB Opinion and Order, J.A. p. 9. These are legitimate inferences from the evidence of record, and they support the conclusion that Blackman acted recklessly and dangerously when, while flying at high speed in a controlled area toward other aircraft properly within the area, he intentionally turned off his transponder and deprived the air traffic controllers of his identity and altitude in order to escape sanctions which, as a previous offender, he knew were inevitable.

In *Winslow v. Nat'l Transp. Safety Bd.*, 885 F.2d 615, 617 (9th Cir.1989), the court reviewed an NTSB decision overturning an administrative law judge's reduction of the sanction imposed by the Administrator for flying at too low an altitude. The court

noted that "NTSB decisions, including decisions regarding sanctions, will be upheld *unless* they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Id.* (original emphasis). In reviewing sanctions, a "wide deference" must be given the agency's choice. *Id.* (quoting *Holmes v. Helms,* 705 F.2d 343, 347 (9th Cir.1983) (per curiam)). The court went on to reject the petitioner's arguments that sanctions for the violation of the same regulation must in every case be similar.

> *However, since violations of the same regulation in different cases may be predicated on widely dissimilar factual circumstances, and may raise entirely diverse safety and enforcement concerns, the fact that different sanctions have been ordered by the Administrator in separate cases for the same regulatory violation does not, standing alone, necessarily present an issue of disparate treatment which could be deemed a compelling reason for modifying the sanction he has sought in the later case.* Such an issue would ordinarily arise only where the material facts of each case were so similar that no persuasive distinguishing features could be identified.

*Id.* at 619 (quoting *Administrator v. Pearson,* 3 NTSB 3837, 3838 (1981) (original emphasis).

The petitioner's high-speed, deep penetration of controlled airspace, his potentially dangerous convergence with other air traffic, and then his attempt to efface the electronic record of his identity by turning off his transponder, distinguish this case from those accidental infractions that would merit the lesser sanction of suspension of certificate. The decision to revoke a certificate is committed to the discretion of the Administrator, and the facts of record show that he did not abuse that discretion in this case.[1]

## C.

Petitioner Blackman raises two arguments concerning the emergency nature of the revocation of his certificate. First, he argues that the emergency revocation of his certificate constituted an abuse of discretion by the Administrator. Second, he argues that this alleged abuse of discretion deprived him of the opportunity to conduct the kind of discovery process he wanted. In that respect, he claims to have requested discovery of all evidence that the FAA possessed to support the emergency revocation, all the evidence that the FAA intended to rely on at the administrative hearing, and a copy of his prior enforcement record. He admits to having received discovery of all the evidence the FAA intended to present at the hearing, but he insists that he could have received additional discovery had the Administrator proceeded by some method other than emergency revocation.

As the Administrator has broad discretion to select an appropriate sanction, he also has broad discretion to decide when public safety concerns warrant emergency action on his part. To show an abuse of that broad discretion, anyone

> challenging the Administrator's emergency determination must demonstrate a substantial likelihood that the determination was "a clear error of judgment" lacking any rational basis in fact.

*Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017, 1021 (9th Cir.1980). Considering the petitioner's negligence in flying into the controlled airspace and his apparent willingness to threaten air safety in order to conceal his errors, it might well have been an abuse of discretion to allow the petitioner to keep flying. The exercise of the Administrator's discretion to revoke the petitioner's certificate on an emergency basis had a rational basis in fact, it was not a clear error of judgment, and it should not be disturbed.

Finally, petitioner Blackman argues that he was somehow disabled in the preparation of his case by the fact that the

---

1. 49 C.F.R. § 61.13(g) allows a person to reapply for a pilot's certificate one year after the date of its revocation. The revocation is therefore similar to a one-year suspension, with the additional requirement that the pilot requalify.

Administrator chose to revoke his certificate on an emergency basis. The only deprivation the petitioner points to has to do with discovery he claims he could have availed himself of if more time had been available to him.

Under 49 U.S.C.App. § 1429(a), an emergency revocation results in the immediate loss of a pilot's certificate, but it requires a hearing, if demanded, within 60 days. This time period is set so as to expedite a hearing before a body capable of overruling the Administrator's emergency revocation and restoring a pilot's certificate. The 60-day period is for the protection of the pilot, who has been deprived of his certificate without a hearing. It is not a machination designed to cheat the pilot of his due process rights. In a very similar case, the court disposed of the same objection as follows:

> Indeed, petitioners assert that they did not have sufficient time to prepare their defense and appeal to the Board. But, the expedited disposition mandated by the statute is for the benefit of the licensees, and they were free to waive it. Probably, for economic reasons, petitioners chose not to do so. While recognizing their difficulties, we are not persuaded that prejudice resulted or that a hearing at a later date would have produced a different result.

*Air East, Inc. v. Nat'l Transp. Safety Bd.*, 512 F.2d 1227, 1231 n. 8 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

It appears that the petitioner was afforded discovery of all of the evidence that the FAA intended to introduce against him. If he had wished to conduct additional discovery, he had the opportunity to obtain a postponement of his hearing. In any event, he has not mentioned what particulars of discovery he would have sought had he been afforded more time. The basic elements of procedural due process are notice and the opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Absent some showing of how, in particular, the petitioner was harmed by having had a hearing within 60 days, it would seem that discovery of the adversary's trial evidence together with a hearing before an administrative law judge and an appeal to the NTSB itself might meet procedural due process standards. *See, Canfield Aviation v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 750 (5th Cir.1988) (due process does not even require that a person be given pre-hearing discovery of the witnesses and each item of evidence to be used against him). Petitioner's unspecific claim of prejudice is too feeble to survive the harmless error rule of 5 U.S.C. § 706: "... due account shall be taken of the rule of prejudicial error." Petitioner Blackman's claims of prejudice from the time limits established for his protection also pale in light of the fact that criminal defendants charged with felonies are guaranteed only thirty days for trial preparation. 18 U.S.C. § 3161(c)(2).

## IV.

In summary, we hold that the findings of the NTSB are supported by substantial evidence; that neither the Administrator's revocation of petitioner's license nor the emergency proceedings were an abuse of discretion; and that petitioner's due process rights were not violated. Therefore, the decision of the NTSB will be affirmed.