Robert TUR, Petitioner,

v.

**FEDERAL AVIATION
ADMINISTRATION,
Respondent.**

No. 92–70094.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1993.

Decided Sept. 7, 1993.

Matthew J. Fairshter, Fairshter & Associates, Glendale, CA, for petitioner.

Joseph A. Conte, Office of the Chief Counsel, F.A.A., Washington, DC, for respondent.

Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.

POOLE, Circuit Judge:

## I.

On September 27, 1991, respondent James B. Busey (Administrator) issued an emergency order revoking petitioner Robert Albert Tur's Commercial Pilot Certificate on the basis of a finding that petitioner lacked the qualifications required of a helicopter pilot. The order charged petitioner with five counts of violations of Federal Aviation Regulations. Tur appealed this order by notice dated October 10, 1991. Because the petitioner was appealing an emergency order, an expedited hearing was set before an Administrative Law Judge (ALJ), but petitioner was notified that the emergency procedures could be waived, allowing him more time to prepare for the hearing.

Following a hearing on October 30 & 31, 1991, the ALJ issued an initial oral decision and order, which found that although the allegations in Counts 1, 4 and 5 had not been established, those in Counts 2 and 3 had. In Count 2, Tur was charged with reckless operation of an aircraft and operation of an aircraft at an unsafe minimum altitude. See 14 C.F.R. §§ 91.13, 91.111 (1992). It was alleged that Tur had operated his helicopter on May 27, 1988, within 100 feet of a fire on the Redondo Beach Pier, Redondo Beach, California. Hovering in this manner caused smoke and heat to blow on firefighters fighting the fire, thereby temporarily blinding them, and generated considerable noise, thereby interfering with communications.

Count 3 charged Tur with reckless operation of an aircraft, operating an aircraft in formation flight without authorization, and operating his helicopter so close to another aircraft as to create a collision hazard. See 14 C.F.R. §§ 91.13, 91.111 (1992). It was alleged that Tur had flown in formation with a Los Angeles Fire Department rescue flight transporting a gunshot victim between Hospital of the Good Samaritan and Cedars–Sinai Medical Center. This forced the Fire Department pilot, who had not authorized Tur to fly in formation, to alter his course plan and bypass his landing site in order to avoid a collision. The ALJ found that these incidents were established by a preponderance of the evidence, and that they supported a finding that Tur lacks the qualifications necessary to hold an airman's certificate. He thus sustained the Administrator's Order of Revocation.

On November 5, 1991, appellant filed a notice of appeal with the National Transportation Safety Board (NTSB). By opinion and order dated December 13, 1991, and served December 16, 1991, the NTSB denied Tur's appeal and affirmed the emergency order of revocation. Tur now petitions for review of this order.

## II.

The NTSB had jurisdiction over Tur's appeal of the order of revocation under 49 U.S.C. app. § 1429(a). We have jurisdiction under 49 U.S.C. app. § 1486(a) to review "[a]ny order, affirmative or negative, issued by the Board ... upon petition, filed within sixty days after the entry of such order." While we thus clearly have jurisdiction over the petition insofar as it seeks review of the NTSB order, respondents contest jurisdiction to consider petitioner's challenge to the Administrator's determination of the existence of an emergency because more than sixty days elapsed between issuance of the emergency order of revocation and this petition.

Whether we have jurisdiction is a question of law reviewed *de novo. Kolek v. Engen,* 869 F.2d 1281, 1283 (9th Cir.1989). On October 30, 1991, Tur petitioned this court for injunctive relief from the Administrator's emergency determination.[1] Respondents thus argue that petitioner already had an opportunity to contest the emergency nature of the FAA's order and should not be given a second chance to do so now.

We have held that "[a]n aggrieved party whose certificate has been revoked under an emergency order has two options to be heard." *Go Leasing, Inc. v. National Transp. Safety Bd.,* 800 F.2d 1514, 1523 (9th Cir.1986). That party may either pursue administrative remedies on an expedited basis, or it may petition this court for review of the emergency order. *Id.* at 1523–24. Respondents would read these options as exclusive of each other. We decline to decide this question, however, since it is clear that there is no merit to Tur's challenge to the Administrator's determination.[2]

To succeed in his challenge, petitioner must show that "the Administrator's finding of an emergency was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" by "demonstrat[ing] a substantial likelihood that the determination was 'a clear error of judgment' lacking any rational basis in fact." *Nevada Airlines,* 622 F.2d at 1020–21 (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974)).

■ The record supports the Administrator's determination. He had credible, eye-witness testimony from several sources attesting to numerous violations of Federal Aviation Regulations by Tur, any one of which would have indicated a lack of qualification. From this evidence the Administrator could reasonably have inferred that continued operation of an aircraft by petitioner presented a threat to public safety. *See Go Leasing,* 800 F.2d at 1523 (use of emergency procedures valid when, in Administrator's discretion, "safety in air commerce or air transportation and the public interest requires."). We thus find no error in the Administrator's emergency determination.

## III.

Tur next argues that the Administrator used the emergency rules to circumvent the "Stale Complaint Rule," 49 C.F.R. § 821.33. Petitioner appears to believe that the Administrator declared an emergency to take advantage of 49 C.F.R. § 821.55(e), which allows no motions to dismiss during emergency proceedings, but does allow the substance of the motion to be stated in the answer to the Administrator's complaint. Even in the unlikely event that this was the Administrator's motivation for making the emergency determination, petitioner in no way was prejudiced since the ALJ heard petitioner's Stale Complaint objection, and properly held that the rule had no application in this case.

■ The Stale Complaint Rule bars the Administrator from using offenses which are more than 6 months old *unless* the Administrator alleges a lack of qualification of the

---

1. Tur's motion for temporary restraining order and order to show cause was construed as a motion to stay the emergency revocation, and denied by a motions panel of this court on October 31, 1991. *Tur v. FAA,* No. 91–70644. The petition was dismissed for failure to prosecute on May 13, 1992.

2. In *Nevada Airlines, Inc. v. Bond,* 622 F.2d 1017 (9th Cir.1980), we recognized that courts have typically reviewed the "Administrator's use of emergency action only in conjunction with review of the revocation question, and only after the administrative appeal was concluded." *Id.* at 1019. We concluded, however, that immedi-ate review in this court of the emergency determination was permissible and necessary because in emergency situations revocation or suspension is allowed for up to 60 days without prior notice or hearing. *Id.* We noted the lack of "an administrative record or agency hearing at this stage of the proceedings," *id.* at 1020, and expressed a concern not to "preempt the purpose of judicial review of the final NTSB decision on the question of certificate revocation." *Id.* at 1021. We are concerned that parties have a meaningful opportunity to challenge the emergency determination. Foreclosing review upon a complete record because a party has felt compelled to seek immediate review conceivably could preclude such a meaningful challenge.

certificate holder.[3] The ALJ made it perfectly clear that the old allegations made in this case were not barred by the Stale Complaint Rule because the Administrator's order alleged a lack of qualifications, and correctly determined that each of the allegations, if true, would have presented an issue of lack of qualification.

## IV.

Petitioner also claims that he was denied due process by being forced to respond to charges and file briefs within the expedited time frame of emergency proceedings. Petitioner complains that the Administrator's invocation of emergency proceedings forced him into a dilemma—on the one hand the emergency order immediately deprived him of his certification so that he could not afford to waive the expedited proceedings, while on the other hand the expedited proceedings prevented him from performing full discovery on all the counts he was facing and deprived him of access to a transcript of the Administrative Law hearing while he was preparing his appeal to the NTSB. We are sympathetic to petitioner's plight, but we believe that the process provided petitioner was appropriate and adequate to balance the competing interests presented by this case.

■ "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Toussaint v. McCarthy*, 801 F.2d 1080, 1098 (9th Cir.1986) (quotations omitted), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Analysis of a due process claim proceeds in two steps: first, we must decide "whether the interest asserted rises to the level of 'liberty' or 'property' protected by the Fifth and Fourteenth Amendments", *Holmes v. Helms*, 705 F.2d 343, 345 (9th Cir.1983); if it does, we "must then determine what process is due." *Id.*

■ Petitioner undoubtedly has a protectable property interest in his airman's certificate. *See Go Leasing*, 800 F.2d at 1524.

The shortcoming petitioner attributes to the process afforded him in this case is its failure to accommodate two potentially competing elements of due process—the right to have a post-deprivation hearing at a meaningful time, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985), and the right to have adequate time to prepare a defense. *See Vanes v. United States Parole Comm'n*, 741 F.2d 1197, 1202 (9th Cir.1984).

■ Of course, before petitioner's property interest can finally be destroyed through permanent revocation of his certificate, he is entitled to a hearing. However, "the timing and nature of the required hearing 'will depend on appropriate accommodation of the competing interests involved.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1151, 71 L.Ed.2d 265 (1982) (quoting *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975)). In this case, the private interest at stake is petitioner's property interest in his airman's certificate. The governmental interest is the public safety and welfare. The importance of the latter justifies giving immediate effect to revocation orders "where danger to the public is present." *Morton v. Dow*, 525 F.2d 1302, 1305 (10th Cir.1975) ("[N]othing invalid in the authority given in 49 U.S.C. § 1429 to the Administrator to revoke an airworthiness certificate in an emergency and without a hearing."). Because we have recognized the necessity of, in appropriate instances, providing for the immediate revocation of a certificate, the availability of expedited proceedings is essential to securing a timely post-deprivation hearing. The expedited proceedings have already been approved by this court as

---

**3.** "Where the complaint states allegations of offenses which occurred more than 6 months prior to the Administrator's advising respondent[s] as to reasons for proposed action under section 609 of the Act, respondent[s] may move to dismiss such allegations pursuant to the following provisions: ... In those cases where the complaint alleges lack of qualification of the certificate holder: (1) The law judge shall first determine whether an issue of lack of qualification would be presented if any or all of the allegations, stale and timely, are assumed to be true.... (2) If the law judge deems that an issue of lack of qualification would be presented by any or all of the allegations, if true, he shall proceed to a hearing on the lack of qualification issue only, and he shall so inform the parties." 49 C.F.R. § 821.33.

providing an appropriate balance between the certificate holder's property interest and the government's need to promote public safety. *Grant v. National Transp. Safety Bd.*, 959 F.2d 1483, 1485 (9th Cir.1992); *Go Leasing*, 800 F.2d at 1523–24.

■■■ As this case suggests, however, there may be instances when a hearing cannot be prepared for adequately within the limited time frame of the emergency proceedings. In *Grant*, we raised the possibility that the expedited review requirements of the emergency procedures could be waived, allowing "review under the ordinary nonemergency procedures." 959 F.2d at 1486. We now hold that due process requires that individuals have the option of waiving their right to expedited proceedings in order to receive meaningful review of their claims. *See Blackman v. Busey*, 938 F.2d 659, 664 (6th Cir.1991) (quoting *Air East, Inc. v. Nat'l Transp. Safety Bd.*, 512 F.2d 1227, 1231 n. 8 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975)). In this case, the demands of due process were met when petitioner was given the option by the NTSB of waiving the emergency procedures and thereby securing a hearing "at a more suitable time."[4] Petitioner was given the responsibility of determining whether he would have adequate time to prepare for his hearing; he may feel now that he made the wrong decision, but this is not an error we can or should remedy.

Moreover, most of petitioner's claims of prejudice arising from the haste with which expedited proceedings were conducted are vague and conclusory. We note that petitioner did have thirty days to prepare for the hearing before the ALJ—a length of time we would ordinarily consider adequate to prepare a defense. *Compare* 18 U.S.C. § 3161(c)(2) (mandating that absent waiver criminal trial start no "less than thirty days from the date on which the defendant first appears"). Petitioner has secured some evidence, albeit of uncertain reliability, which would undoubtedly have been relevant to the fact-finder's determination on Count III of the Administrator's complaint.[5] Of course, additional time spent in the preparation of one's defense will often improve the defense case. The question before us, however, is whether the process employed in this case afforded petitioner adequate notice and an opportunity to be heard. Assuming *arguendo* that the notice provided in this case was inadequate by virtue of the expedited proceedings, petitioner himself possessed the power to expand the time frame simply by waiving the emergency proceedings. We can think of no better means of balancing the government's compelling need to promote safety and the public welfare against the individual pilot's right to meaningful and timely review of certificate revocation. Consequently, we reject petitioner's argument that his due process rights were violated.

## V.

Tur challenges the factual basis supporting the NTSB order. Our review is limited to considering whether the findings of the ALJ and the NTSB are supported by substantial evidence in the record. *Essery v. Dep't of Transp.*, 857 F.2d 1286, 1288 (9th Cir.1988). Substantial evidence means more than a mere scintilla but less than a preponderance. *Desrosiers v. Secretary*, 846 F.2d 573, 576 (9th Cir.1988). The factual findings of the ALJ are accorded great deference, *Dohmen–Ramirez v. Commodities Futures Trading Comm'n*, 837 F.2d 847, 856 (9th Cir.1988),

---

**4.** It was suggested at oral argument that opting out of the expedited timeframe of emergency proceedings might result in quite lengthy delays before a hearing could be secured. Since the certificate would be revoked throughout this period, this is obviously a source of concern, and might in the appropriate case give rise to a due process violation. This opinion, however, should by no means be read as establishing any definite time beyond which delay in providing and resolving a post-deprivation hearing would violate due process. We note that delays much longer than 60 days have been approved in other circumstances. *See Cassim v. Bowen*, 824 F.2d 791, 799 (9th Cir.1987); *Loudermill*, 470 U.S. at 546 n. 11, 105 S.Ct. at 1495 n. 11.

Our concern is mitigated, moreover, by the fact that immediate review of the Administrator's emergency revocation is available in this court while discovery is proceeding.

**5.** The government has responded with additional evidence supporting its version of the incident alleged in Count III.

and we will affirm if the findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ The finding in Count II that petitioner had operated his helicopter in an unsafe manner was supported by the testimony of Chief Aust, who testified that he recognized petitioner's helicopter and that petitioner had admitted to him later that he had been hovering over the building to warn the firefighters. Captain Reed also testified that the helicopter downwash engulfed him and other firefighters in smoke and that the helicopter noise was interfering with communication between firefighters. Petitioner argues that the evidence was also compatible with his version of the event—that it was another helicopter which had caused the problem. This, however, does nothing to undercut the factual support of the NTSB's findings— "findings are supported by the evidence if they logically arise from the facts. They need not be the only result which could so arise." *Meik v. National Transp. Safety Bd.*, 710 F.2d 584, 586 (9th Cir.1983). Petitioner also complains that the ALJ used a subjective standard and thus never concluded that there was an actual hazard to the firefighters created by his helicopter. Even if this were true, the NTSB did make an explicit finding that "the evidence of record abundantly supports" the conclusion that Tur "had operated his helicopter in a way that created an actual hazard for [the firefighters]."

The finding in Count III was supported by the testimony of Captain Quinn, who had piloted the helicopter endangered by Tur. Quinn testified that Tur had announced himself by radio, and that he had recognized Tur's voice. Quinn also testified that just before he began his descent, he saw Tur flying in formation with him, and that Tur was close enough that he could visually identify Tur. Quinn also testified that Tur had not received authorization to fly so close, and that he was forced to alter his flight path to avoid a collision. His testimony was corroborated by Doug Robb, the paramedic in the helicopter, who testified that he had seen another helicopter in formation flight with them. While we are concerned about the reliability of Quinn's testimony—he was apparently mistaken about the incident alleged in Count I, and there was some question as to his motivation for reporting these and other incidents involving Tur—the ALJ and NTSB were also apprised of these factors reflecting on Quinn's credibility as a witness. Moreover, the ALJ specifically addressed Quinn's credibility in his findings and found Quinn to be credible despite certain mistakes or disparities in his testimony. We are in no position to second guess this finding, and thus defer to the ALJ. Based on Quinn's testimony, as corroborated by Robb, there was substantial evidence supporting the finding.

## VI.

■ Finally, petitioner argues that since the Administrator's order revoking Tur's license was effective October 1, 1991, and the final NTSB ruling wasn't served until December 16, 1991, the sixty day period mandated by 49 U.S.C. app. § 1429(a) was exceeded, thus requiring the reversal of the Board's order.

Section 1429(a) requires:

The filing of an appeal with the National Transportation Safety Board shall stay the effectiveness of the Secretary of Transportation's order unless the Secretary of Transportation advises the National Transportation Safety Board that an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of his order, in which event the order shall remain effective and the National Transportation Safety Board shall finally dispose of the appeal within sixty days after being so advised by the Secretary of Transportation.

According to 49 C.F.R. § 821.54(b), this sixty day period begins to run "as of the date when the Administrator's written advice of the emergency character of his order has been received by the Office of Administrative

Law Judges or by the Board." [6] The Administrator's written notice, in turn, is due within three days of the Board's receipt of the certificate holder's appeal of the Administrator's emergency order. 49 C.F.R. § 821.-55(c). Tur's appeal was received by the NTSB on October 15, 1991. The Administrator notified the NTSB of the emergency nature of the proceedings by letter dated October 17, 1991, and received October 22, 1991. Thus, if the C.F.R. provisions are the appropriate means of calculating the sixty day time period, the December 16, 1991 order would have been made within the sixty day time period.

In *Grant* we raised the possibility of "read[ing] 49 U.S.C.App. § 1486 [limiting review in this court to petitions filed within sixty days of the order appealed] as mandating that a final board decision be rendered at an earlier time—within sixty days of issuance of the emergency order." 959 F.2d at 1484 n. 2. Because the emergency order is reviewable immediately and upon review of the final agency action, however, there is no reason to trump the plain language of 49 U.S.C.app. § 1429(a) with the 49 U.S.C.app. § 1486 requirement.

Under the plain statutory language, the sixty day limit runs from the date when the NTSB is advised of the emergency by the Secretary of Transportation. 49 U.S.C. app. § 1429(a).[7] Thus, the NTSB decision was not untimely as it was filed 56 days after the Administrator's written notice was received on October 22, 1991.

## VII.

Tur's petition for review is DENIED.

---

6. 49 U.S.C. § 106(g) delegates to the Administrator responsibility for carrying out the Secretary's duties.

7. Other circuits have also uniformly read this sixty day period as beginning to run "on the date when the FAA's written notice of the emergency nature of the suspension of Petitioner's certificate was received by the Office of Administrative Law Judges of the NTSB." *Gallagher v. National Transp. Safety Bd.,* 953 F.2d 1214, 1221 (10th Cir.1992); *see also McCarthney v. Busey,* 954 F.2d 1147, 1152 (6th Cir.1992).

