NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0477n.06

No. 16-4332

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 16, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MATT LAWSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ON PETITION FOR REVIEW |
| | ) FROM THE NATIONAL |
| MICHAEL P. HUERTA, Administrator, | ) TRANSPORTATION |
| Federal Aviation Administration, | ) SAFETY BOARD |
| | ) |
| Respondent. | ) |
| | ) |

Before: CLAY, GRIFFIN, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. The maintenance records just did not line up with the Cessna they were inspecting. So the mechanics warned the Federal Aviation Administration ("FAA"), which traced the discrepancies to mechanic Matt Lawson. The FAA ultimately found Lawson intentionally falsified the records and revoked his Aircraft Mechanic Certificate and Inspection Authorization. Lawson appealed, but the National Transportation Safety Board ("NTSB") affirmed. Lawson now challenges that decision, arguing that the Board's decision was procedurally infirm, that its findings lacked substantial evidence, and that its sanction was inappropriate. We disagree and so deny his petition for review.

I.

A.

The FAA is a stickler for record keeping. Any time a mechanic works on an airplane or performs an annual inspection, FAA rules require him to make and certify accurate records of the

work performed in the airplane's maintenance logbook. Whether the mechanic replaces an engine or simply tinkers with a gauge, the logbook must collect its due.

Certain work will trigger additional requirements. When a mechanic makes a "Major Repair and Alteration," for instance, he must describe it on an FAA Form 337. And when the work is finished, he must provide copies of the completed form to the airplane's owner and the FAA. The logbook and the form give the plane's owners, the FAA, and future mechanics the information they need to keep the plane safe. *See* FAA Advisory Circular No. 43.9-1F.

Sometimes a mechanic must ask the FAA to approve his Form 337 *before* he gets to work. This will depend on the availability of "approved data." Approved data includes all the schematics and instructions that the agency has already approved for use in the field. One source is the Supplemental Type Certificate ("STC"), which sets out pre-approved instructions for repairs or alterations. Whenever a mechanic follows those instructions, he can simply fill out a Form 337 and get on with it. But if he cannot find an STC instruction for his project, he must request a "field approval" before proceeding.

To request a field approval, a mechanic must describe the alterations he intends to make on a Form 337, gather data showing that the alteration is safe, and then send the materials to an FAA field office. At the field office, an Aviation Safety Inspector reviews the materials. Once the inspector approves the request, the mechanic has the go-ahead.

B.

Matt Lawson, owner and operator of Lawson Aviation, converts Cessnas into seaplanes. Until the FAA brought this action against him, Lawson held an Aircraft Mechanic Certificate and Inspection Authorization. These permitted him to repair, modify, and inspect airplanes.

In 2011, a Cessna owner asked Lawson to make alterations to his plane ("the Aircraft") and then to inspect it. The alterations required a field approval, so Lawson submitted a Form 337 and supporting data to a local FAA field office. He proposed to fit the Aircraft with a K-model engine and a 78-inch propeller.

Lawson's request was assigned to Safety Inspector Daniel Moore. Inspector Moore denied the first request, finding that it lacked sufficient data. After they corresponded further, however, Moore drafted new Form 337 language for Lawson. And Lawson, at Moore's instruction, gathered more data, including an STC that permitted installing G-model (rather than K-model) engines in various Cessna aircraft ("the Cessna STC"). Moore approved a revised Form 337 that followed that STC, but with one variation: Moore allowed Lawson to install a 78-inch propeller instead of the pre-approved 76-inch propeller.

Lawson got to work. In December 2012, he stated in the Aircraft's logbook that he had: (1) inspected the Aircraft and deemed it airworthy; (2) installed a G-model engine pursuant to the field approval and Cessna STC; and (3) repaired the Aircraft's lower firewall with parts from a plane of the same year and model. He also completed and certified two Form 337s reflecting the alterations he had made. On Form 337(I)—the same one Moore approved—Lawson certified that he had installed a G-model engine and a 78-inch propeller. On Form 337(II), Lawson certified that he replaced the lower firewall in compliance with the applicable Cessna manual.

More than a year later, mechanics at a different repair station inspected the Aircraft. They noticed that its records did not match its actual condition, so they alerted the FAA, which assigned the case to Maintenance Inspector Randy Steffes. Steffes inspected the Aircraft himself, finding twenty-one discrepancies between its condition and its records. In light of all these discrepancies, he determined the Aircraft was not airworthy.

After further investigation, the FAA concluded that Lawson was responsible for the discrepancies and issued an emergency order revoking his Mechanic Certificate and Inspection Authorization. Lawson appealed the order to the NTSB. After a two-day trial, an administrative law judge ("ALJ") upheld the order.

Lawson then appealed to the full Board, which affirmed the ALJ's finding that Lawson had made several false entries in the Aircraft's logbook. Specifically, it found that: He certified that the Aircraft was airworthy, when it was not; he certified that he had installed a G-model engine and a 78-inch propeller when, in truth, he had installed a K-model engine and 80-inch propeller; and he certified that he installed stainless-steel rivets in the Aircraft's firewall when, in fact, they were aluminum. Each of these entries, the Board determined, was intentionally false and thus a violation of FAA regulations. *See* 14 C.F.R. § 43.12(a)(1) (prohibiting any person from "mak[ing] or caus[ing] to be made . . . [a]ny fraudulent or intentionally false entry in any record or report that is required to be made, kept, or used to show compliance with any requirement under this part"). It too affirmed the FAA's emergency order revoking Lawson's credentials. This petition followed.

## II.

We may set aside an NTSB order only if it was "arbitrary, capricious, an abuse of discretion, or, where there has been a hearing, the agency action is unsupported by substantial evidence." *Blackman v. Busey*, 938 F.2d 659, 661 (6th Cir. 1991). Although we review the NTSB's legal conclusions de novo, we must accept its factual findings if they are supported by substantial evidence—evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Kratt v. Garvey*, 342 F.3d 475, 480 (6th Cir. 2003).

Lawson raises three arguments.  First, he argues that the Board's factual findings were not supported by substantial evidence or in accordance with applicable law.  Second, he argues that the Board erred in refusing to dismiss the action under the "stale complaint rule."  Finally, he argues that—even if the charges against him are true—revocation was not an appropriate sanction.

A.

FAA regulations prohibit mechanics from making "fraudulent or intentionally false entr[ies]" in required maintenance records.  14 C.F.R. § 43.12(a).  Intentional falsification is a "knowing misrepresentation of a material fact."  *Cassis v. Helms*, 737 F.2d 545, 546 (6th Cir. 1984).  To prove intentional falsification, the FAA must establish that Lawson (1) made a false representation, (2) in reference to a material fact, (3) with knowledge of its falsity.  *Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976).  The FAA need not, however, prove that Lawson specifically intended to deceive or that someone relied upon his misrepresentation—those are elements of the distinct offense of fraud.  *Cassis*, 737 F.2d at 546 ("Fraud and intentional falsification are distinct concepts for purposes of this regulation.").

The NTSB found that Lawson intentionally falsified logbook entries and Form 337s. Lawson challenges those findings on procedural grounds and on the merits.

1.  *Lawson's Procedural Challenges*

Lawson first argues that the FAA's complaint did not satisfy the heightened pleading standard for fraud allegations.  *See* Fed. R. Civ. P. 9(b) (requiring parties "alleging fraud" to "state with particularity the circumstances constituting fraud"); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-04 (6th Cir. 2008) (describing "Rule 9(b)'s special

pleading standard"). Alternatively, he argues that the FAA's complaint did not contain the "short and plain statement" of a claim for relief. Fed. R. Civ. P. 8(a)(2).

Both arguments fail. First, Lawson failed to raise his Rule 9(b) argument before the NTSB. A reviewing court may consider an objection to an NTSB order "only if the objection was made in the proceeding conducted by the Board or if there was a reasonable ground for not making the objection in the proceeding." 49 U.S.C. § 1153(b)(4). Lawson has offered no reason for failing to raise this argument below, so he may not raise it here. *See Gabbard v. FAA*, 532 F.3d 563, 566 (6th Cir. 2008) ("[H]e failed to present this argument to the Board, which by itself defeats the argument here.").

Second, the FAA's complaint satisfied the notice-pleading standard of Rule 8. *See Huerta v. Armstrong*, NTSB Order No. EA-5660, 2013 WL 3227358, at *3 (June 3, 2013) ("[T]he Administrator utilizes the general practice of 'notice pleading' in cases under the Board's Rules of Practice."). Rule 8 ensures simply that each party has adequate notice of the other's claims and an opportunity to meet them. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Here, the FAA alleged in its complaint that Lawson had (1) installed a K-model rather than a G-model engine, (2) installed an 80-inch rather than a 78-inch propeller, (3) installed aluminum rivets rather than stainless-steel rivets, and (4) claimed to have complied with the Cessna STC and Forms 337(I) & (II) even though he had not. And all of these discrepancies, the FAA alleged, were violations of its regulations—specifically, 14 C.F.R. § 43.12(a)(1). Thus, the FAA notified Lawson of both the claim and the factual basis for the claim. Rule 8 required no more. *Cf. Huerta v. Ducote*, 792 F.3d 144, 154 (D.C. Cir. 2015) (concluding that there is "no structural or textual basis" for imposing a "heightened-pleading standard" on a complaint that "facially and plausibly alleges all of the key elements" of intentional falsification).

2.  *Lawson's Substantive Challenges*

Lawson next argues that the NTSB's findings were not supported by substantial evidence, namely its findings that he had falsely reported the Aircraft as airworthy in his annual-inspection logbook entries, made false engine-installation logbook entries, and falsely certified Form 337(I) and Form 337(II).

i.  *The Annual-Inspection Logbook Entries*

As to the annual-inspection records, Lawson questions whether the FAA proved that he made any false entries at all.  The Board saw no direct evidence of the Aircraft's condition at the time he inspected it.  How then, he asks, could it conclude that his inspection entries were false?

Easy:  The Board may look to circumstantial evidence.  *See Adm'r v. Lewis*, NTSB Order No. EA-1177, 1978 WL 19059, at *4 (Aug. 17, 1978) ("[I]n cases where an improper repair or inspection is not discovered until some point in time after the act or omission which constitutes the regulatory violation, the evidence presented by the Administrator must of necessity be circumstantial in nature.").  And there was ample circumstantial evidence to support the Board's conclusion here.  First, the Aircraft flew for only nine hours after Lawson returned it to service.  Second, the logbook bore no subsequent entries related to the alterations and repairs that Lawson performed.  And, third, the discrepancies were not attributable to deterioration over time—they must have arisen, instead, from purposeful alterations to the Aircraft.  That final point found support in photographs of the discrepancies, engine-installation instructions with which Lawson apparently failed to comply, expert testimony from two FAA Inspectors, and Lawson's own testimony.  *See* Logbook, J.A. 255-56; Form 337(I)-(II), J.A. 257-60; Engine Data Plate Photo, J.A. 265; Cessna Structural Repair Manual, J.A. 267; Installation Instructions, J.A. 268-281;

STC SA00728SE, J.A. 292-93; *see also* ALJ Order, J.A. 224 (crediting Inspectors). This evidence was sufficient to justify the NTSB's finding.

ii.      *The Engine-Installation Logbook Entries & Form 337(I)*

As for the engine-installation entries and Form 337(I), Lawson concedes that they were inaccurate in hindsight. But he insists the FAA failed to prove he intentionally falsified them.

There was substantial evidence to support the Board's conclusion that Lawson was aware of each of the falsities in Form 337(I) and the corresponding logbook entries when he made them. According to Inspectors Moore and Steffes, Lawson admitted in interviews that the engine he installed was a K-model—not a G-model, as he certified—and that he believed the two engines were essentially the same. Transcript, J.A. 90, 122, 224. And Lawson *himself* testified that he knew he had installed an 80-inch propeller even though Form 337(I) only authorized a 78-inch one. Transcript, J.A. 149. Additionally, the ALJ noted that Lawson "testified in many instances that the STC requirements were unnecessary or incompatible" and that he had "chose[n]" not to comply with the STC or to seek adjustments to Form 337(I). ALJ Order, J.A. 225-26. The Board agreed with the ALJ, finding Lawson "evasive" about whether he knowingly disregarded the Cessna STC and "unwilling[]" to consult that STC despite certifying his compliance with it. Bd. Order, J.A. 394. There is more evidence to that effect, but it need not detain us here. The Inspectors' and Lawson's testimony alone support the Board's finding.

Lawson responds that on this evidence he is guilty, at most, of poor wording and carelessness—not intentional falsification. In support, he cites several cases where the Board refused to revoke airmen's credentials for ambiguous or incomplete logbook entries. *See, e.g.*, *Adm'r v. Alvarez*, 5 N.T.S.B. 1906, 1906 (1987) (addressing intentional falsification by "omission or failure to make an entry"); *Babbitt v. Hayes*, NTSB Order No. EA-5459, 2009 WL

1956365, *5 (June 24, 2009) (addressing "ambiguous language" in a logbook entry that used the term "replaced" when "reinstalled" was intended). But unlike those cases, this is not a case of simple ambiguity. Lawson said he installed a G-model engine and a 78-inch propeller in accordance with the Cessna STC and Form 337(I). But he did not. Instead, he installed a K-model engine and an 80-inch propeller. These facial discrepancies are substantial evidence of intentional falsity. After all, if such patent discrepancies amounted only to excusable "ambiguities" or "omissions," nothing would be certain. In intentional-falsification cases, the FAA would be reduced to seeking confessions.

Alternatively, Lawson argues that he could not have intentionally falsified either the engine-installation entries or the Form 337(I) because Inspector Moore drafted the Block-8 language on Form 337(I). This argument fails because it makes no difference who drafted the language. Alterations must accord with the Form's terms, whoever drafted them. *See* Form 337(I), J.A. 257. Lawson admits that he did not even *read* the Block-8 language Inspector Moore drafted before performing the engine and propeller installations. Yet he argues that he was justified in certifying that he complied with the drafted language. Transcript, J.A. 157-58. This is like a student contesting his "F" by claiming that, no, actually, it was his friend's work— he just copied it. It was Lawson's responsibility to ensure that the Form 337 and logbook language accurately reflected the work he did on the Aircraft. *See Cooper v. NTSB*, 660 F.3d 476, 483 (D.C. Cir. 2011) (citation omitted) ("[A]n airman, having acted in a manner that could be viewed as evincing a willful disregard of the truth or falsity of the information officially submitted . . . should be determined to have intended that whatever answer he gave be utilized in the review of his qualifications." (citation omitted)). His attempt to shift the blame is unavailing.

9

### iii.     *Form 337(II): The Aluminum Rivets*

Lawson does not dispute that he knowingly used aluminum rivets in the Aircraft's firewall, rather than the steel rivets called for by the Form 337(II). He argues, instead, that the swap was immaterial because a Cessna engineer signed off on the aluminum rivets via email. The ALJ excluded the engineer's email, however, because Lawson failed to certify it as a business record.

Even if the email had been admitted, it would have made no difference. Information is "material" if it is "capable of influencing" an agency decision. *Cassis*, 737 F.2d at 547. Inspectors Moore and Steffes testified that the FAA relies on the information in Form 337s in determining the airworthiness and safety of aircraft. They also indicated at least one reason why it matters whether an airplane's rivets are stainless steel or aluminum: stainless-steel rivets are fireproof; aluminum rivets are not. That example illustrates why Form 337 entries are important. They provide aircraft owners and later mechanics with the information necessary to maintain airworthy planes. If a Form 337 entry is not accurate, that inaccuracy is material to owners, mechanics, and FAA Inspectors—regardless whether it is makes a difference to the airplane manufacturer. *See Garvey v. Thunderbird Propellers, Inc.*, NTSB Order No. EA-4648, 1998 WL 138881 at *2 (Mar. 26, 1998) (finding that a technician's use of an "interchangeable" nut in propeller repair work, rather than the nut called for by the manual and approved by the FAA inspector, was a material misrepresentation), *aff'd sub nom. Thunderbird Propellers, Inc. v. FAA*, 191 F.3d 1290 (10th Cir. 1999); *see also id.* at *2 ("[T]he point here is not so much the adequacy of the unauthorized part, but the accuracy of records that must be relied on in order for others, unaware of the false listing, to obtain quality control or other information about it[.]"). The

Board's finding that Lawson intentionally falsified Form 337(II) by stating that he used steel rivets was thus supported by substantial evidence and in accordance with applicable law.

B.

Lawson also argues that the Board should have dismissed the FAA's claims under the stale-complaint rule, which allows an airman to move to dismiss alleged violations that were more than six-months old when the FAA initiated the action. *See* 49 C.F.R. § 821.33; *Abou-Sakher v. Garvey*, 238 F.3d 419, at *2 (6th Cir. 2000) (table). The rule does not apply if—accepting all allegations as timely and true—a complaint raises "an issue of lack of qualification." 49 C.F.R. § 821.33(b). One lacks qualification if he has committed any "regulatory violations that, by their very nature, warrant revocation[.]" *Ducote*, 792 F.3d at 148.

Lawson's argument fails for two reasons. First, it comes too late. The stale-complaint rule is "a threshold inquiry that is enforced at the outset of an [FAA] proceeding through a motion to dismiss the complaint." *See id.* at 153 (citing 49 C.F.R. § 821.33). Yet Lawson did not move to dismiss the complaint at the outset of the proceeding. He invoked the rule long after his hearing before the ALJ. His stale-complaint argument was, by that time, stale.

Second, the FAA's complaint is shielded from the rule. The FAA plausibly alleged that Lawson knowingly made false statements about his alterations to and inspection of the Aircraft. Allegations of this sort, "by [their] very nature, suggests such a serious lack of honesty and judgment . . . as to inherently call into question [Lawson's] qualifications." *Id.* at 154-55. That is why the Board "has long recognized, as a virtually categorical matter," that intentional falsification of required records warrants revocation. *Id.* Accepting the FAA's allegations as true and timely, then, the complaint presents "an issue of lack of qualification." 49 C.F.R. § 821.33(b).

C.

Lawson argues finally that—even if the charges against him were true—revocation was excessive. Courts must uphold "NTSB decisions . . . regarding sanctions . . . *unless* they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Blackman*, 938 F.2d at 663 (internal quotation marks omitted).

The FAA and the NTSB have staked out a consistent position in their intentional falsification cases. For good reason, they are serious about enforcing compliance with their maintenance rules and preserving the integrity of their records-keeping system. *See Helms v. Cassis*, 4 N.T.S.B. 555, 557 (1982) ("The maintenance of the integrity of the system of qualification for airman certification, which is vital to aviation safety and the public interest, depends directly on the cooperation of the participants and on the reliability and accuracy of the records and documents maintained and presented to demonstrate compliance."), *aff'd*, 737 F.2d 545 (6th Cir. 1984). Thus, the Board's cases make clear that even a single incident of intentional falsification constitutes a "lack of qualification" and justifies revoking the violator's credentials. *See, e.g.*, *Adm'r v. McCarthney*, 7 N.T.S.B. 670, at *2 (Dec. 28, 1990) ("[E]ven one intentional falsification compels the conclusion that the falsifier lacks the necessary care, judgment and responsibility required to hold any airman certificate."); *Olsen v. NTSB*, 14 F.3d 471, 476 (9th Cir. 1994) (concluding that one "intentionally false logbook entry regarding [an aircraft] tachometer" was "sufficient to justify the FAA's revocation of [the mechanic's] airframe and powerplant mechanic certificate"). Those who fail to comply with these rules do so at their own peril. And where, as here, they openly flout them, revocation is hardly arbitrary or capricious. It is to be expected.

III.

For the foregoing reasons, we **DENY** Lawson's petition for review.